UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALCAN ALUMINUM CORPORATION,

Defendant.

**COMPLAINT**

Civil Action No. ______________

The United States of America, by authority of the Attorney General and acting at the request of the Administrator of the Environmental Protection Agency (EPA), alleges:

NATURE OF THE ACTION

1. This is a civil action brought under Sections 106(b)(1) and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606(b)(1) and 9607(a), regarding the Tri-Cities Barrel Superfund Site ("Site") in the Town of Fenton, Broome County, New York. Plaintiff the United States seeks: (a) payment from defendant Alcan Aluminum Corporation ("Alcan") of costs incurred by the United States for response actions regarding the Site including accrued interest; and (b) the imposition of a civil penalty against Alcan for its noncompliance with an EPA unilateral administrative order issued to Alcan in September 2001, which directed Alcan to participate and cooperate with other parties who are implementing, pursuant to a judicial consent decree, the remedy that EPA selected for the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 1395, and 42 U.S.C. § 9613(b), because the claims arose in this district and the release or threatened release of hazardous substances occurred in this district.

## DEFENDANT

4. Defendant Alcan Aluminum Corporation is a Texas corporation with its corporate headquarters and principal place of business in Mayfield Heights, Ohio ("Alcan-Texas"). Alcan-Texas is the successor-in-interest, by 2003 corporate merger, to Alcan Aluminum Corporation, an Ohio corporation ("Alcan-Ohio"). Alcan-Ohio is the successor-in-interest, by 1985 corporate merger, to Alcan Aluminum Corporation, a New York corporation ("Alcan-NY"). Alcan-Texas, Alcan-Ohio and Alcan-NY are hereafter individually and collectively referred to as "Alcan."

## THE STATUTORY SCHEME

5. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a), 9601(25).

6. Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment . . .

7. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a):

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

8. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders, and, within certain limits, the Regional Administrators of EPA have been re-delegated this authority.

9. Under Section 106(b)(1) of CERCLA, 42 U.S.C. § 9606(b)(1):

> Any person who, without sufficient cause, willfully violates, or fails or refuses to comply with, any order of the President under subsection (a) of this section may, in an action brought in the appropriate United States district court to enforce such order, be fined not more than $25,000 for each day in which such violation occurs or such failure to comply continues.

10. Pursuant to the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, the maximum civil penalty for noncompliance with an administrative order that takes place from January 30, 1997 through March 15, 2004 is $27,500, and after March 15, 2004 is $32,500.

11. Under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3):

> [A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances [a "generator" of hazardous substances]; . . .
>
> shall be liable for--
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan . . .
>
> . . . The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D).

THE SITE AND RESPONSE ACTIONS

12. The Site comprises approximately 15 acres and is located in the Hamlet of Port Crane, Town of Fenton, Broome County, New York.

13. Tri-Cities Barrel Co., Inc. ("TCB") operated a facility at the Site from about 1954 to 1992, at which it cleaned and reconditioned used drums.

14. The used drums brought to TCB's facility formerly contained materials used in commercial and industrial processes. Some or all of these drums contained residues of the materials with which they had originally been filled. Some or all of these

residues contained "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including, but not limited to, volatile organic compounds, semi-volatile organic compounds, pesticides, polychlorinated biphenyls and metals.

15. TCB used a variety of processes to remove the residues from the drums, including water rinses, caustic sodium hydroxide (lye) rinses, incineration, particle blasting and scraping. These processes generated wastes and these wastes were discharged onto the bare ground or into unlined lagoons at the Site, or were otherwise disposed of at the Site. The process wastes disposed of at the Site contained hazardous substances, which were released into the environment at the Site.

16. TCB also stored drums at its facility which contained hazardous substances. Some of these drums leaked and their contents were released into the environment at the Site.

17. Alcan owned and operated a facility in Oswego, New York from 1963 through at least July 1994. At the Oswego facility Alcan recycled aluminum scrap into ingots, and then, through hot and cold rolling processes, produced a variety of aluminum sheet and plate products for the beverage, food container, transportation, and construction industries.

18. Alcan used a variety of materials at its Oswego facility. Many of these materials were delivered to the Oswego facility in metal drums. These materials included, but were not limited to, "Trichloroethane 111 Degreaser" and lubricants called "Molub-Alloy 777-1" and "Molub-Alloy 777-2." Some or all of these materials

contained hazardous substances. The degreaser contained the hazardous substance 1,1,1-trichloroethane ("TCA"). The Molub-Alloy 777-1 and 777-2 lubricants contained the hazardous substance antimony.

19. Alcan disposed of the drums after it used the materials contained therein. During the period from 1963 to at least 1990, Alcan arranged for the delivery of at least 14,000 used drums to TCB's facility. Some or all of these drums contained residues of the materials that were originally contained in the drums including, but not limited to, Trichloroethane 111 degreaser and Molub-Alloy 777-1 and 777-2 lubricants. Thus, the used drums Alcan sent to the Site contained residues which contained hazardous substances.

20. At its facility, TCB cleaned and reconditioned Alcan's used drums. These operations generated wastes which contained hazardous substances, and these hazardous substances were disposed of at the Site.

21. The soils, sediments and groundwater at the Site are contaminated with hazardous substances including, but not limited to, antimony and TCA. TCA, when disposed of in the environment, biodegrades into vinyl chloride, another CERCLA hazardous substance. Vinyl chloride also was found at the Site. Hazardous substances like those found in Alcan's used drums have been found at the Site.

22. EPA listed the Site on the National Priorities List ("NPL") in October 1989. See 54 *Fed. Reg.* 41,000 (Oct. 4, 1989). The NPL was established pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and is found at 40 C.F.R. Part 300,

Appendix B. The NPL is a list of those sites at which there are releases of hazardous substances, and which EPA has ranked as having the highest priority for remediation or other response action among all nationally identified releases, based on relative risk or danger to public health, welfare or the environment.

23. On March 31, 2000, EPA issued a Record of Decision ("ROD") selecting the remedial action for the Site. The selected remedial action included, among other remedial measures, the excavation and off-site disposal of contaminated soils and sediments and the construction and operation of an extraction and treatment system for the contaminated groundwater.

24. On August 8, 2001, the United States District Court for the Northern District of New York entered a consent decree between the United States and 43 settling parties under Sections 106 and 107 of CERCLA, 42 U.S.C. § 9606 and 9607. The consent decree required the settlors to, among other things, implement the remedial action for the Site as selected in the ROD. *See United States v. Agway, Inc., et al.*, No. 3:01-0637 (N.D.N.Y. Aug. 8, 2001). The settlors are currently performing the remedial action at the Site pursuant to the consent decree.

25. On September 16, 2001, EPA issued unilateral administrative order, U.S. EPA Index No. CERCLA 02-2001-2036 (the "UAO") to Alcan and to the New York State Department of Transportation ("NYSDOT"). The UAO required Alcan and the NYSDOT to participate and cooperate with the settlors in performing the remedial action selected in the ROD. The UAO became effective on October 16, 2001. The UAO

required Alcan and the NYSDOT to, among other things, contact the liaison counsel for the settlors, to make a good faith offer of settlement to the settlors and to either participate in the work or, in lieu of participation, to pay for its share of the work. The NYSDOT is participating with the settlors in performing the remedial action. Alcan did not comply with any of the requirements of the UAO.

GENERAL ALLEGATIONS

26. Alcan is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

27. The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

28. There have been and will continue to be releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases of hazardous substances at or from the Site.

FIRST CLAIM FOR RELIEF: COST RECOVERY

29. Paragraphs 1 through 28 are realleged and incorporated herein by reference.

30. Alcan is liable to the United States pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9797(a)(3), as a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at a facility owned or operated by another party or entity and containing such hazardous substances.

31. The United States has taken response actions, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), as a result of the releases or threatened releases of hazardous substances at the Site.

32. The United States' response actions regarding the Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

33. The United States has incurred and will continue to incur costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to respond to the releases or threatened releases of hazardous substances at the Site, including enforcement costs in connection with this matter.

34. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Alcan is jointly and severally liable to the United States for response costs incurred and to be incurred in connection with the Site.

## SECOND CLAIM FOR RELIEF: CIVIL PENALTIES

35. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

36. Alcan is liable to the United States for a civil penalty of up to $27,500 per day for each day of its noncompliance with EPA's September 28, 2001 UAO through March 15, 2004, and up to $32,500 per day for each day thereafter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

1. Enter judgment in favor of the United States, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding Alcan liable for all unreimbursed costs incurred by the United States with respect to the Site, plus interest accrued thereon;

2. Order Alcan to pay a civil penalty of up to $27,500 per day for each day of its noncompliance with the UAO through March 15, 2004, and up to $32,500 per day for each day thereafter;

3. Award the United States its costs of this action; and

4. Grant the United States such other and further relief as the Court deems just and proper.

Respectfully Submitted,

CATHERINE R. MCCABE
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

MARK A. GALLAGHER, N.Y. Bar No. 512664
ELISE FELDMAN
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-5405/-7784

GLENN T. SUDDABY
United States Attorney
Northern District of New York

JAMES C. WOODS, N.Y. Bar No. 102843
Assistant United States Attorney
Northern District of New York
231 James T. Foley Courthouse
445 Broadway
Albany, NY 12207
(518) 431-0247

OF COUNSEL:

MICHAEL A. MINTZER
N.Y. Bar No. 1358308
Assistant Regional Counsel
U.S. Environmental Protection
Agency, Region II
290 Broadway
New York, NY 10007-1866